# EXHIBIT

## "2"

## THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

---

**AGILENT TECHNOLOGIES, INC.,**

    **Plaintiff,**

    **v.**                               **Case No. 2:25-cv-02101-MSN-cgc**

**XPEDIENT MANAGEMENT GROUP,
LLC and ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,**

    **Defendants.**

---

**XPEDIENT MANAGEMENT GROUP,
LLC**

    **Cross-Plaintiff,**

    **v.**

**ST. PAUL FIRE AND MARINE
INSURANCE COMPANY**

    **Cross-Defendant.**

---

### ANSWER AND DEFENSES OF DEFENDANT
### XPEDIENT MANAGEMENT GROUP, LLC, AND CROSS-CLAIM
### AGAINST ST. PAUL FIRE AND MARINE INSURANCE COMPANY

---

Defendant Xpedient Management Group, LLC ("Defendant" or "Xpedient") responds to Plaintiff's Complaint as follows:

### ANSWER

Xpedient responds to the allegations of Plaintiff's Complaint paragraph by paragraph, as follows:

## NATURE OF THE ACTION

1.      Xpedient admits that Plaintiff has filed a Complaint and that the document speaks for itself.

2.      Xpedient admits only that the relationship with Plaintiff is set forth in the Master Operating Services Agreement and the Site Operating Agreement attached to Plaintiff's Complaint.  Xpedient denies any remaining allegation in Paragraph 2.

3.      Xpedient admits the area of the warehouse in question was leased from St. Paul Fire and Marine Insurance Company ("St. Paul") and that Xpedient entered the Site Operating Agreement with Plaintiff, which is attached as Exhibit B to Plaintiff's Complaint.  Xpedient denies any remaining allegations in Paragraph 3.

4.      Xpedient admits that unusually cold temperatures were experienced in the Memphis area in January of 2024.  Xpedient denies all remaining allegations in Paragraph 4 as stated.

5.      Xpedient admits the subject warehouse had a failure of sprinkler pipes on or about January 17, 2024.  Xpedient denies all remaining allegations in Paragraph 5 as stated.

6.      Xpedient admits the Site Operating Agreement with Plaintiff has not yet expired and that the agreement with Plaintiff has not been breached by Xpedient.  Xpedient further denies any liability in tort or that a bailment existed.  Xpedient denies all remaining allegations in Paragraph 6 as stated.

7.      Xpedient denies any negligence or wrongdoing as alleged in Paragraph 7.  Xpedient admits the Site Operating Agreement with Plaintiff has not yet expired.  Xpedient denies any remaining allegations in Paragraph 7.

## PARTIES

8.      Admitted.

9.      Admitted.

10.     Admitted.

## JURISDICTION AND VENUE

11.     Xpedient is not challenging subject matter jurisdiction at this time.

12.     Admitted.

13.     Admitted.

## BACKGROUND

### A.  AGILENT SEEKS A WAREHOUSER FOR SURPLUS PIPETTE TIPS

14.     Xpedient lacks sufficient knowledge to admit or deny the veracity of the allegations set forth in Paragraph 14 and therefore denies the same.

15.     Xpedient lacks sufficient knowledge to admit or deny the veracity of the allegations set forth in Paragraph 15 and therefore denies the same.

16.     Xpedient lacks sufficient knowledge to admit or deny the veracity of the allegations set forth in Paragraph 16 and therefore denies the same.

17.     Xpedient lacks sufficient knowledge to admit or deny the veracity of the allegations set forth in Paragraph 17 and therefore denies the same.

18.     Xpedient lacks sufficient knowledge to admit or deny the veracity of the allegations set forth in Paragraph 18 and therefore denies the same.

### B.   AGILENT'S SELECTS XPEDIENT AND THE CROMWELL WAREHOUSE

19.      Xpedient admits only that the relationship with Plaintiff is set forth in the Master Operating Services Agreement and the Site Operating Agreement attached to Plaintiff's Complaint.

20. Xpedient admits it has expertise in logistics and warehousing and that it seeks to deliver beyond the expectations of its customers. Xpedient denies all remaining allegations in Paragraph 20.

21. Xpedient admits the statement quoted in Paragraph 21 appear on its website.

22. Xpedient admits it operates the warehouse space identified in Paragraph 22. Xpedient denies all remaining allegations in Paragraph 22 as stated.

23. Admitted.

24. The allegations in Paragraph 24 are not directed at Xpedient. To the extent a response is required Xpedient has insufficient information to admit or deny these allegations.

### C. AGILENT AND XPEDIENT ENTER INTO WAREHOUSING AGREEMENTS

25. Admitted.

26. The agreements referenced in Paragraph 26 speak for themselves. Xpedient admits only that the agreements were entered, and the terms are set forth therein.

27. The agreement referenced in Paragraph 27 speaks for itself. Xpedient admits only that the agreement was entered, and the terms are set forth therein.

28. The agreement referenced in Paragraph 28 speaks for itself. Xpedient admits only that the agreement was entered, and the terms are set forth therein.

29. The agreements referenced in Paragraph 29 speak for themselves. Xpedient admits only that the agreements were entered, and the terms are set forth therein.

30. Admitted based on information and belief.

### D. DEFENDANTS FAIL TO MAINTAIN THE CROMWELL WAREHOUSE

31. Xpedient is without sufficient knowledge or information to admit or deny the allegations set forth in Paragraph 31.

32.     Xpedient admits the HVAC system at the subject warehouse operated on natural gas.

33.     Xpedient admits the warehouse was equipped with a fire suppression system. Xpedient denies all remaining allegations in Paragraph 33 as stated.

34.     Xpedient admits that on May 23, 2023, an email regarding the utility accounts was sent from a representative of Xpedient to a representative of St. Paul and that the content of that email speaks for itself.

35.      Xpedient admits that on May 23, 2023, a representative of St. Paul responded to the email referenced in Paragraph 34 and that the content of that email speaks for itself.

36.     Denied as stated.

37.     Xpedient admits that various emails were exchanged regarding the utilities and that each email speaks for itself.  Xpedient denies any remaining allegations set forth in Paragraph 37 as stated.

38.     Denied.

39.     Xpedient lacks sufficient information to admit or deny the veracity of the allegations in Paragraph 39.

40.     Denied as stated.

**E.  A DEEP FREEZE HITS MEMPHIS**

41.     Xpedient lacks sufficient information to admit or deny the veracity of the allegations in Paragraph 41.

42.     Xpedient admits based upon information and belief that Memphis Light Gas and Water issued a press release and that the language of the release speaks for itself.

43.     Xpedient admits based upon information and belief that Memphis Light Gas and Water issued a press release and that the language of the release speaks for itself.

44.     Xpedient admits based upon information and belief that Memphis Light Gas and Water issued a press release and that the language of the release speaks for itself.

45.     Xpedient admits based upon information and belief that Memphis Light Gas and Water issued a press release and that the language of the release speaks for itself.

46.     Xpedient admits based upon information and belief that Memphis Light Gas and Water issued a press release and that the language of the release speaks for itself.

47.     Xpedient lacks sufficient information to admit or deny the veracity of the allegations in Paragraph 47.

48.     Xpedient lacks sufficient information to admit or deny the veracity of the allegations in Paragraph 48.

49.     Xpedient lacks sufficient information to admit or deny the veracity of the allegations in Paragraph 49.

50.     Xpedient admits that the temperature began to drop on January 14, 2024. Expedient denies any remaining allegations set forth in Paragraph 50.

51.     Xpedient lacks sufficient information to admit or deny the veracity of the allegations in Paragraph 51.

52.     Based on information and belief Xpedient admits the allegations in Paragraph 52.

**F.  THE DEEP FREEZE DAMAGES THE UNHEATED CROMWELL WAREHOUSE, DESTROYING THE MAJORITY OF THE TIPS INVENTORY**

53.      Based on information and belief Xpedient admits the allegations in Paragraph 53.

54.     Xpedient admits the Memphis Fire Department responded to the warehouse and issued an incident report and the language of the report speaks for itself.

55.     Based on information and belief Xpedient admits that on or about January 17, 2024, a representative of Xpedient contacted St. Paul's property manager and informed them of the water intrusion event.  Xpedient denies all remaining allegations in Paragraph 55.

56.     Based on information and belief Xpedient admits the allegations in Paragraph 56.

57.     Xpedient admits that representatives of Plaintiff visited the warehouse and contended that some of the boxes stored there were damaged.

58.     Xpedient lacks sufficient information to admit or deny the veracity of the allegations in Paragraph 58.

59.      Xpedient lacks sufficient information to admit or deny the veracity of the allegations in Paragraph 59.

60.     Denied.

61.     Denied.  St. Paul's lease with Xpedient states that St. Paul "shall provide the normal utility service connections with separate metering for [Xpedient] premises to the building" and that St. Paul "warrants to [Xpedient] that the fire system, plumbing, electrical and heating, ventilation and air conditioning systems . . . shall be in good working order as of the Commencement Date."  See Standard Commercial Lease Agreement Cromwell Warehouse Exh. "1" (filed under seal) ¶¶ 4.01, 5.06.

62.     Denied.

### G.  AGILENT SUFFERS OVER $9 MILLION IN DAMAGES FROM THE WATER INTRUSION EVENT

63.      Xpedient admits that on or about January 18, 2024, Xpedient notified Plaintiff of the water intrusion event.

64.     Denied as stated.

65. Xpedient lacks sufficient information to admit or deny the veracity of the allegations in Paragraph 65.

66. Denied.

67. Xpedient lacks sufficient information to admit or deny the veracity of the allegations in Paragraph 67.

68. Xpedient lacks sufficient information to admit or deny the veracity of the allegations in Paragraph 68.

## H. IN THE AFTERMATH OF THE WATER INTRUSION EVENT, MONTHS LAPSE BEFORE BASIC UTILITIES ARE RESTORED TO THE CROMWELL WAREHOUSE

69. Xpedient denies that it attempted to "hide the lack of gas" as alleged in Paragraph 69. Xpedient admits that the gas utilities were ultimately connected, and the HVAC system was placed into service following the subject incident. Certain allegations within the timeline provided in Paragraph 69 are summarized from email correspondence. Xpedient admits that emails were sent and received on the dates set forth in Paragraph 69 and that the language of those emails speaks for itself.

70. Xpedient admits that St. Paul was responsible for and ultimately did repair and replace the damaged fire sprinkler system in the subject warehouse. Xpedient denies that it was responsible for or that it did replace or repair the damage sprinkler system.

71. Denied.

## I. AGILENT SEEKS INFORMATION ABOUT THE WATER INTRUSION EVENT WHILE DEFENDANTS STONEWALL AND DENY WRONGDOING

72. Based on information and belief Xpedient denies the allegations set forth in Paragraph 72.

73. Denied as stated.

74. Denied.

75. Xpedient admits that email correspondence was sent and received in March of 2024 regarding the subject incident and the language of that correspondence speaks for itself. Xpedient denies all remaining allegations set forth in Paragraph 75.

76. Denied as stated.

77. Xpedient admits that correspondence from Xpedient's counsel was sent to Agilent in November of 2024 and the language of that correspondence speaks for itself. Xpedient denies all remaining allegations set forth in Paragraph 77 as stated.

78. Xpedient admits that on or around June 7, 2024, Agilent sent correspondence to Xpedient and Xpedient admits the correspondence speaks for itself. Xpedient denies all remaining allegations set forth in Paragraph 78.

79. The allegations in Paragraph 79 are not directed at Xpedient; therefore, a response by Xpedient is not required. To the extent a response is required Xpedient is without sufficient information to admit or deny those allegations.

80. Xpedient admits that it provided a written response to Plaintiff's June 7, 2024, correspondence. Xpedient admits only that the language of the response speaks for itself. Xpedient denies all remaining allegations in Paragraph 80.

81. Xpedient admits that it corresponded with Plaintiff on or around September 12, 2024, and in the months following. Xpedient admits only that the language of the correspondence speaks for itself. Xpedient denies all remaining allegations in Paragraph 81.

82. The allegations in Paragraph 82 are not directed at Xpedient; therefore, a response by Xpedient is not required. To the extent a response is required Xpedient is without sufficient information to admit or deny those allegations.

83. Xpedient denies the allegations set forth in Paragraph 83.

84. The allegations in Paragraph 84 are not directed at Xpedient; therefore, a response by Xpedient is not required. To the extent a response is required Xpedient is without sufficient information to admit or deny those allegations.

### J. DEFENDANTS BENEFIT FROM THEIR BREACH AND WRONGDOING WHILE AGILENT CONTINUES TO PERFORM ITS OBLIGATIONS UNDER THE AGREEMENTS

85. Xpedient denies the allegations set forth in Paragraph 85 as stated. St. Paul agreed in the lease with Xpedient to "provide the normal utility service connections with separate metering for . . . the building" and St. Paul's lease also "warrants to [Xpedient] that the fire system, plumbing, electrical and heating, ventilation and air conditioning systems currently serving the Lease Premises . . . shall be in good working order as of the Commencement Date."

86. Denied.

87. Xpedient admits that Agilent has continued paying rents under the Site Operating Agreement dated May 15, 2023, attached to Plaintiff's Complaint as Exhibit B. Xpedient specifically denies that performance has been "excused, waived, or prevented" for any reason. Xpedient denies all remaining allegations set forth in Paragraph 87 as stated.

88. Denied.

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT
### (AGAINST XPEDIENT)

89. Xpedient adopts and incorporates by reference its responses to Paragraphs 1 through 88 of the Complaint.

90. Xpedient admits the Agreements are valid and enforceable. Xpedient admits only that each term within each Agreement speaks for itself. Xpedient denies as stated any further allegation in Paragraph 90.

91.     Xpedient admits only that each term within each Agreement speaks for itself. Xpedient denies as stated any further allegation in Paragraph 91.

92.     Xpedient specifically denies that Agilent provided timely notice of its claims. Xpedient admits that Agilent has continued paying rents under the Site Operating Agreement dated May 15, 2023, attached to Plaintiff's Complaint as Exhibit B.  Xpedient specifically denies that performance has been "excused, waived, or prevented" for any reason.  Xpedient denies all remaining allegations set forth in Paragraph 92 as stated.

93.     Denied.

94.     Denied.

95.     Denied.

96.     Denied.

**SECOND CAUSE OF ACTION**
**BREACH OF BAILMENT AND/OR NEGLIGENT BAILMENT**
**(AGAINST XPEDIENT)**

97.     Xpedient adopts and incorporates by reference its responses to Paragraphs 1 through 96.

98.     Xpedient admits that Plaintiff's inventory was moved into the warehouse on or about May 22, 2023, pursuant to the Master Operating Services Agreement and the Site Operating Agreement attached to Plaintiff's Complaint.  Xpedient denies as stated all remaining allegations set forth in Paragraph 98.

99.     Denied.

100.    Xpedient is without sufficient information to admit or deny that each item of inventory was in "good, new, and undamaged condition" when it was moved into the subject warehouse and therefore denies this allegation out of an abundance of caution.

101.    Denied.

102.    Denied.

103.    Denied.

### THIRD CAUSE OF ACTION
### NEGLIGENT MISREPRESENTATION
### (AGAINST XPEDIENT)

104.    Xpedient adopts and incorporates by reference its responses to Paragraphs 1 through 103.

105.     Xpedient admits that part of its business involves providing warehousing and storage.  Xpedient denies any remaining allegations in Paragraph 105.

106.    Denied.

107.    Denied.

108.    Denied.

109.    Denied.

110.    Denied.

### FOURTH CAUSE OF ACTION
### NEGLIGENCE AND/OR RECKLESS ACTIONS OR OMISSIONS
### (AGAINST XPEDIENT)

111.     Xpedient adopts and incorporates by reference its responses to Paragraphs 1 through 110.

112.    Denied.

113.    Denied.

114.    Denied.

115.    Denied.

116.    Denied.

## FIFTH CAUSE OF ACTION
## DECLARATORY RELIEF
## AGAINST XPEDIENT

117.    Xpedient adopts and incorporates by reference its responses to Paragraphs 1 through 116.

118.    Denied.

119.    Denied.

120.    Denied.

## SIXTH CAUSE OF ACTION
## NEGLIGENCE
## (AGAINST ST. PAUL)

121.    Xpedient adopts and incorporates by reference its responses to Paragraphs 1 through 120.

122.    The allegations in Paragraph 122 are not directed at Xpedient; therefore, a response by Xpedient is not required.

123.    The allegations in Paragraph 123 are not directed at Xpedient; therefore, a response by Xpedient is not required.

124.    The allegations in Paragraph 124 are not directed at Xpedient; therefore, a response by Xpedient is not required.

125.    The allegations in Paragraph 125 are not directed at Xpedient; therefore, a response by Xpedient is not required.

126.    The allegations in Paragraph 126 are not directed at Xpedient; therefore, a response by Xpedient is not required.

## **PRAYER FOR RELIEF**

127.    Xpedient denies the allegations in the final unnumbered paragraph of the Complaint beginning with the word "WHEREFORE" including each subparagraph "A." through "I."

128.    Xpedient denies any and all allegations contained in the Complaint that are not specifically admitted herein.

## FIRST AFFIRMATIVE DEFENSE

To the extent Xpedient is liable to Plaintiff (which is specifically denied) Plaintiff has contractually limited recovery to a "maximum liability" against Xpedient "not to exceed one million dollars ($1,000,000) per occurrence."   See Master Operating Services Agreement ¶ 12(C)(c).   Therefore, Plaintiff's attempt to recover any amount over $1,000,000 for the water intrusion event is not supported by the parties' agreement.  In Tennessee, parties are free to contract with each other to construct their own bargain and to allocate the handling of future liability. *Planters Gin Co. v. Federal Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 892 (Tenn. 2002).

## SECOND AFFIRMATIVE DEFENSE

Plaintiff failed to timely and adequately submit a claim for "Products lost, or damaged" pursuant to the Master Operating Services Agreement ¶ 12(C)(e), and as such, "[n]o action may be maintained by Customer for loss of or damage to Products."  Therefore, Plaintiff's claims are barred.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff contractually waived any right to "special, indirect, consequential, or punitive damages" and any claim for "loss of production, loss of income, or loss of profits" therefore any such damages sought by Plaintiff are barred.  in the Master Operating Services Agreement ¶12(C)(e).

## FOURTH AFFIRMATIVE DEFENSE

All disputes arising under the Master Operating Services Agreement "shall be submitted to mediation prior to any other action being taken."  Plaintiff failed to comply with the applicable

mediation provisions set forth in the Master Operating Services Agreement ¶ 30 (M) and is therefore barred from maintaining this action.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the Force Majeure provision of the Master Operating Services Agreement, which provides that, "[n]either party shall be liable to the other for failure to perform its obligations under this Agreement or any Site Operating Agreement if prevented from doing so because of an act of God . . ." The adverse weather conditions that occurred in January 2024 were unforeseeable and unavoidable events that cannot be the basis for Plaintiff's breach of contract claims.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred or limited by the doctrine of modified comparative fault as that doctrine has been adopted by the courts of the State of Tennessee. Xpedient avers that any recovery to which Plaintiff is entitled is barred or reduced by the negligence of Plaintiff or other persons or entities under the doctrine of comparative fault. To the extent found liable, Xpedient is responsible only for the portion of fault allocated to it, if any.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's losses or damages as claimed in the Complaint, were the result of causes over which Xpedient had no control, including independent, intervening, or superseding causes.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff breached the contractual obligation to act in good faith and cooperate in all matters relating to the Agreements.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by the comparative fault of St. Paul; Colliers Management-Memphis, LLC; Memphis Light Gas and Water; and third parties that discovery may reveal.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrines of estoppel, waiver, ratification, acquiescence and/or assumption of risk because Plaintiffs leased the subject warehouse fully aware of its condition and ultimately elected to lease the space at issue after inspecting it and/or having the opportunity to inspect it.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's tort claims are barred, in whole or in part, by the Economic Loss Doctrine which prohibits recovery in tort for claims sounding in contract.

## TWELFTH AFFIRMATIVE DEFENSE

Xpedient acted in accordance with its rights, obligations, and duties provided in the Master Operating Services Agreement and the Site Operating Agreement attached to Plaintiff's Complaint and all of the terms associated therewith.

## THIRTEENTH AFFIRMATIVE DEFENSE

Xpedient affirmatively raises all applicable contractual and statutory defenses, rights, and remedies provided in the Master Operating Services Agreement and the Site Operating Agreement attached to Plaintiff's Complaint, which defenses are incorporated by reference herein.

## FOURTEENTH AFFIRMATIVE DEFENSE

Xpedient affirmatively states that Plaintiff's claims are barred, in whole or in part, by the doctrines of setoff and recoupment.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims for damages are barred, in whole or in part, by its failure to mitigate damages.

## SIXTEENTH AFFIRMATIVE DEFENSE

Xpedient affirmatively states that the Complaint is barred, in whole or in part, by the doctrines of estoppel.

## SEVENTEENTH AFFIRMATIVE DEFENSE

To the extent it is revealed that the alleged damaged inventory or other evidence was not properly preserved, Xpedient is entitled to a spoliation instruction and/or other proper relief as may be determined by the Court.

WHEREFORE, Defendant Xpedient Management Group, LLC, respectfully requests that this Court enter judgment in its favor against the Plaintiff, that the Plaintiff's Complaint against Defendant Xpedient Management Group, LLC be dismissed with prejudice, and that Defendant be awarded its costs in defending this action, together with such other and further relief as the Court deems just and proper.

## CROSS CLAIM

**COMES NOW,** Xpedient Management Group, LLC ("Xpedient") pursuant to Federal Rule of Civil Procedure 13(g) and submits this cross claim as to St. Paul Fire and Marine Insurance Company ("St. Paul") and would show as follows:

### PARTIES AND JURISDICTION

1.      Cross-Plaintiff, Xpedient, is a Tennessee limited liability company with its principal place of business located at 100 Crescent Court, Suite 700, Dallas, Texas 75201. The individuals that own Xpedient reside in Ohio and Nevada.

2.      Cross-Defendant, St. Paul Fire & Marine Insurance Company ("St. Paul"). Is a Connecticut corporation with its principal place of business located at One Tower Square, Hartford, Connecticut.

3.      The Court has jurisdiction over this matter pursuant to Federal Rule of Civil Procedure 13(g) because this matter arises out of the same occurrence as the claims asserted in the original action.  Pl.'s Compl. (Doc. #1).  Jurisdiction is also proper because St. Paul is liable by way of an indemnity agreement for all or a part of the claims asserted in Plaintiff's original action.

### FACTS

4.      On or about May 18, 2023, St. Paul ("Lessor") and Xpedient ("Lessee") entered a Commercial Lease Agreement for 45,720 square feet of warehouse space located at 4601 Cromwell Avenue, Building 20 Memphis, Tennessee 38118 (hereinafter "Subject Warehouse"). See Standard Commercial Lease Agreement Cromwell Warehouse Exh. "1" (filed under seal).

5.      Pursuant to the lease agreement St. Paul agreed to provide service connections for utilities as follows:

### Article 4.00 UTILITIES AND SERVICE

> **4.01 Building Services**.  Lessor shall provide the normal utility service connections with separate metering for Lessee premises to the building.  Lessee shall pay the cost of all utility services, including, but not limited to, initial connection charges, all charged for gas, electricity, water, sanitary and storm sewer service, and for all electric lights relating to Lessee's portion of the building.

Cromwell Lease ¶ 4.01 Exh. "1."

6.      St. Paul also provided a warranty to Xpedient that the heating system would be in good working order as follows:

### ARTICLE 5.00 REPAIRS AND MAINTENANCE

> **5.06 Systems Delivery.**  Lessor warrants to Lessee that the fire system, plumbing, electrical and heating, ventilation and air conditioning

18

systems currently serving the Leased Premises (collectively, the "Mechanicals") shall be in good working order as of the Commencement Date.

Cromwell Lease ¶ 5.06 Exh. "1."

7.     On or about May 23, 2023, Xpedient began communicating with St. Paul seeking to have the utilities, including natural gas, connected with separate metering at the Subject Warehouse.  Despite multiple emails to and from St. Paul's property managers and Memphis Light Gas and Water, the natural gas lines to the Subject Warehouse were not connected until April 10, 2024.

8.     The heating system for the Subject Warehouse requires natural gas to operate.

9.     Even though the natural gas connection was established on or about April 10, 2024, the HVAC system for the Subject Warehouse would not properly function and required substantial work and/or replacement.

10.    On or about January 17, 2024, the temperatures dropped below freezing in the Subject Warehouse causing a pipe in the fire sprinkler system to freeze, burst, and leak water into the Subject Warehouse causing damage to inventory stored in the Subject Warehouse.

**COUNT I—BREACH OF CONTRACT**

11.    Xpedient adopts and incorporates by reference all previous paragraphs in this Cross-Claim as if fully set forth herein.

12.    Xpedient, for valuable consideration, contracted with St. Paul for the Subject Warehouse and for St. Paul to (1) provide the normal utility service connections with separate metering for Xpedient and (2) provide a heating system for the Subject Warehouse that is in good working order.

13.     St. Paul breached the contract with Xpedient in that it failed to provide the normal utility service connections and failed to provide a properly functioning heating system for the Subject Warehouse until after the freeze event set forth in Paragraph 10 of the Cross-Claim.

14.     St. Paul's breach proximately caused Xpedient to suffer damages for which Xpedient is entitled to recover.

## COUNT II—BREACH OF INDEMNITY AGREEMENT

15.     Xpedient adopts and incorporates by reference all previous paragraphs in this Cross-Claim as if fully set forth herein.

16.     Pursuant to the lease agreement St. Paul agreed to indemnify Xpedient for any claims or liabilities incurred by Xpedient caused by St. Paul's negligence or breach of the lease:

> **7.08 Indemnification**
>
> . . .
>
> Subject to Section 7.04 above, and to the extent not covered by an insurance policy required herein, Lessor hereby agrees to indemnify and hold Lessee and Lessee's partners, officers, directors and employees harmless from and against any and all costs, damages, claims, liabilities and expenses (including reasonable attorney fees) suffered by or claimed by a third party or by any of Lessee's employees against Lesee or Leasee's partners, officers, directors and employees, to the extent caused by (i) any negligent act or omission by Lessor or its employees, agents or invitees; (ii) latent defects in the Building, the Premises, or Common Areas; (ii) any breach or default by Lessor in the performance or observance of its covenants or obligations under this Lease, including but not limited to costs, damages, claims, liabilities and expenses for injuries to Lessee's partners, officers, directors and employees.

Cromwell Lease ¶ 7.08 Exh. "1."

17.     On or about February 3, 2025, Agilent Technologies, Inc. ("Agilent") filed a lawsuit in the United Stated District Court for the Western District of Tennessee seeking damages from Xpedient (Compl. (doc. #1)) that were caused by St. Paul's negligence and/or breach of the lease agreement.

18.     A notice of default was provided to St. Paul on or about December 3, 2024.  See P. Sales Ltr. 12/3/2024 Exh. "2."

19.     St. Paul has failed to indemnify Xpedient pursuant to the terms of the lease agreement proximately causing damages and costs.

### COUNT III—BREACH OF COVENANT OF QUIET ENJOYMENT

20.     Xpedient adopts and incorporates by reference all previous paragraphs in this Cross-Claim as if fully set forth herein.

21.     Pursuant to the lease agreement St. Paul provided a covenant of quiet enjoyment to Xpedient:

> **14.13 Quiet Possession.**  Lessor agrees that so long as Lessee fully complied with all of the terms, covenants and conditions herein contained on Lessee's part to be kept and performed, Lessee shall and may peaceably and quietly have, hold and enjoy the Leased Premises during the term hereof without such possession being disturbed or interfered with by Lessor or by any person claiming by, through or under Lessor.  Lessor further covenants and represents that Lessor has full right, title, power and authority to make, execute and deliver this Lease.

Cromwell Lease ¶ 14.13 Exh. "1."

22.     Due to St. Paul's failure to comply with the terms of the Lease which required delivery of separately metered utility services upon deliver of possession, Xpedient's quiet enjoyment of the Subject Warehouse was interrupted.

23.     St. Paul's breach of the covenant of quiet possession has proximately caused damages and costs to Xpedient.

WHEREFORE, PREMISES CONSIDERED, Xpedient Management Group, LLC respectfully requests that this Court award it a judgment against St. Paul Fire and Marine Insurance Company as follows:

(a) For an award of compensatory damages in favor of Xpedient for an amount proven at trial;

(b) For a Court Order that pursuant to the terms of the Cromwell Lease that St. Paul shall be obligated to defend, indemnify, and hold harmless Xpedient against the claims alleged in the Complaint filed by Agilent;

(c) For an award of attorney fees and costs incurred by Xpedient as a result of St. Paul's breach of the Cromwell Lease;

(d) For an award of pre-judgment and post-judgment interest; and

(e) For such other further and general relief to which Xpedient is entitled.

RESPECTFULLY SUBMITTED, this the 24th day of February 2025.

*/s/ Andrew B. Schrack*
Andrew B. Schrack (TN 037624)
**Butler Snow LLP**
6075 Poplar Ave., Ste. 500
Memphis, TN 38119
T: 901-680-7200
F: 901-680-7201
andrew.schrack@butlersnow.com

*Attorney for Defendant Xpedient Management Group, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on February 24, 2025.

*/s/ Andrew B. Schrack*
Andrew B. Schrack (TN 037624)