IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| **FACTORY MUTUAL INSURANCE COMPANY**, as subrogee of **AGILENT TECHNOLOGIES, INC.**, <br><br> Plaintiff, <br><br> v. <br><br> **XPEDIENT MANAGEMENT GROUP, LLC** and **ST. PAUL FIRE AND MARINE INSURANCE COMPANY** <br><br> Defendants. | Case No. 2:25-cv-02424-MSN-TMP <br><br> JURY DEMANDED |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
ST. PAUL FIRE AND MARINE INSURANCE COMPANY'S MOTION TO DISMISS**

Plaintiff Factory Mutual Insurance Company ("FMIC"), as subrogee of Agilent Technologies, Inc. ("Agilent"), by and through undersigned counsel, respectfully submits this Response in Opposition to Defendant St. Paul Fire and Marine Insurance Company's ("St. Paul") Motion to Dismiss FMIC's Complaint ("Motion") (ECF 21).

**INTRODUCTION**

This subrogation action[1] arises from a significant water damage loss event ("Loss Event") at a warehouse building owned by Defendant St. Paul (the "Warehouse") that destroyed FMIC's insured's consumable goods inventory while that inventory was being stored in the Warehouse by

---

[1] This Case arises from the same Loss Event at issue in the related case of *Agilent Technologies, Inc. v. Xpedient Management Group, LLC and St. Paul Fire and Marine Ins. Co.*, Case No. 2:25-CV-02101-MSN-CGC (the "*Agilent* Case").

Defendant Xpedient Management Group, LLC ("Xpedient").[2] (Compl. ¶¶ 1 and 14, ECF 1). This action is based upon Defendant Xpedient's contractual breaches of the warehousing agreements between Agilent and Xpedient, and both Defendants' negligence, gross negligence and negligence *per se*, in leaving the Warehouse unheated and the wet pipe sprinkler system therein unprotected from a well-publicized and predicted freeze event (the "Deep Freeze Event"). Defendants' failures in this regard allowed the wet pipe sprinkler system pipes in the Warehouse to freeze, burst and damage over $9 million of Agilent's inventory. (Compl. ¶¶ 41, 110-126, ECF 1). FMIC insured Agilent's inventory pursuant to FMIC policy number 1115069 (hereinafter "the Policy). (Compl. ¶ 42, ECF 1). FMIC has paid Agilent $4,787,087.40 for the damages Agilent sustained as a result of the Loss Event. (Compl. ¶ 43, ECF 1). As a result of its payments and in accordance with common law principles of equitable and/or legal subrogation and the terms of the Policy, FMIC is now subrogated to the rights of Agilent to recover damages from third-persons, to the extent of its payment to Agilent. (Compl. ¶ 44, ECF 1).

In this Case and the related *Agilent* Case, St. Paul has attempted to place all blame on Xpedient, arguing that, as a mere landlord, it had no part in Agilent's loss notwithstanding an unequivocal legal duty imposed upon it as **Owner** of the Warehouse by the Fire Prevention Code of the City of Memphis ("Fire Code") to either: (1) maintain all areas of the Warehouse with a wet pipe sprinkler system at a minimum temperature of 40°F (4°C); or (2) protect the wet pipe sprinkler system with anti-freeze at the onset of freezing weather. St. Paul also makes this "no duty" argument, notwithstanding the critical fact that under its Lease Agreement with Xpedient,

---

[2]   Xpedient is a warehousing and logistics company that leased a portion of the Warehouse to store Agilent's inventory. *Id.*

referenced in FMIC's Complaint,[3] it had control over the natural gas line serving the Warehouse's HVAC system and was responsible for maintaining the Warehouse's HVAC and wet pipe fire sprinkler systems.

In challenging the sufficiency of FMIC's Complaint under Fed. R. Civ. Proc. 12(b)(6), St. Paul relies on three arguments. ***First***, St. Paul contends that FMIC's Complaint should be dismissed under the "first-to-file" rule. However, the "first-to-file" rule has no application here, because this Case and the *Agilent* Case are pending in the same district court before the same judge. ***Second***, St. Paul contends that FMIC does not plead sufficient facts establishing St. Paul's possession of or control over the "premises" where the incident occurred. The fatal flaw in St. Paul's argument, however, is that FMIC's Complaint does not limit the allegations of negligent conduct on the part of St. Paul to just actions with respect to the "premises." Instead, FMIC's Complaint alleges that St. Paul was the ***owner and operator*** of the ***Warehouse*** (i.e., the ***entire warehouse***) (Compl. ¶¶ 94, 96, 98 110), and that St. Paul knew well in advance of the Deep Freeze Event that there was no gas utility line service to the Warehouse's heating system and thus no working heat in the Warehouse to protect the wet sprinkler system from freezing. (Compl. ¶¶ 16, 22-23, 96, 99-100, 107, ECF 1). FMIC's Complaint also alleges that St. Paul knew that the wet

---

[3]   Here, while not attached to FMIC's Complaint, FMIC is permitted to rely on the Lease Agreement between Xpedient and St. Paul in opposing St. Paul's Motion. The Lease Agreement, which is clearly alleged and referenced in FMIC's Complaint, is integral to FMIC's claim of negligence against St. Paul and may be considered without converting St. Paul's Motion to one for summary judgment. (Compl. ¶¶ 1, 14-16, 93, 98, 110). *See Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c) for the proposition that "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment."). Moreover, FMIC's failure to attach the Lease Agreement to its Complaint was not from lack of diligence. Rather, FMIC's counsel Jeff Orr asked St. Paul's counsel to produce the Lease Agreement, but St. Paul's counsel refused to provide that Lease Agreement to FMIC's counsel. *See email between FMIC's counsel Jeff Orr and St. Paul's counsel Paige Bernick dated November 26, 2024,* attached hereto as **Exhibit 1**.

3

pipe sprinkler system serving the Warehouse needed to be maintained in an environment above 40°F (4°C). Additionally, FMIC has alleged that St. Paul, as owner/operator of the Warehouse, owed and breached its duty to maintain, inspect and repair the wet pipe fire sprinkler system and the HVAC system, including its duty to ensure that the heating system was functioning and/or that the wet sprinkler system pipes were properly insulated and protected against freezing. (Compl. ¶¶ 94-96, ECF 1). Clearly, a reasonable and common sense inference from all of the above cited factual allegations set forth in FMIC's Complaint, is that St. Paul, as owner and operator of the entire Warehouse, was in control of, in possession of and was charged with a duty to inspect, maintain and repair the entire wet pipe sprinkler system and to maintain temperatures inside the ***entire Warehouse*** above 40° F so that said wet pipe fire sprinkler system would not freeze and burst, causing damage to property inside the Warehouse.

*Third*, St. Paul relies upon its tortured interpretation of the Fire Code (i.e., the 2021 International Fire Code ("IFC")) adopted by the City of Memphis in its ordinances, to contend that FMIC cannot succeed on its negligence *per se* claim. St. Paul unbelievably asserts in its Motion that the IFC has *one* stated purpose: "to protect persons from injuries related to fire." However, protecting persons from injuries related to fire is ***only one*** of the express purposes of the IFC. Indeed, the applicable language from the IFC quoted by St. Paul on page 7 of its Supporting Memorandum (ECF 21-1) clearly provides that ***another express purpose of the IFC*** is to ***establish a reasonable level of property protection from dangerous conditions in existing buildings***. Thus, St. Paul's contention that FMIC cannot establish that FMIC, as subrogee of Agilent, "belongs to the class of persons the statute was designed to protect" and cannot establish that FMIC's injury "is of the type that the statute was designed to prevent" ***rings hollow***. FMIC clearly can, and will, establish that the Fire Code/IFC was designed to prevent the injury caused by St. Paul as alleged

4

in its Complaint (i.e., property damage caused by a dangerous condition in the Warehouse). Accordingly, for the reasons set forth in more detail below, FMIC has sufficiently pled claims for negligence, gross negligence and negligence *per se* against St. Paul, and St. Paul's Motion should be denied.

## LAW AND ARGUMENT

### I. Rule 12(b)(6) Standard.

When considering a Rule 12(b)(6) motion like St. Paul's instant Motion, the Court must treat all the well-pleaded allegations of FMIC's Complaint as true and construe all of the allegations in the light most favorable to FMIC as the non-moving party. *Elec. Merchant Sys. LLC v. Gaal*, 58 F.4th 877, 882 (6th Cir. 2023) (citing *Taylor v. City of Saginaw*, 922 F.3d 328, 331 (6th Cir. 2019)). Motions to dismiss under Rule 12(b)(6) test "the sufficiency of the claim for relief" and therefore, must be considered in conjunction with Rule 8(a). *Small v. Memphis-Shelby Cnty. Airport Auth.*, 2013 U.S. Dist. LEXIS 193112, *6 (W.D. Tenn. Dec. 31, 2013). Under Rule 8 of the Federal Rules of Civil Procedure, a complaint need only contain (1) a short and plain jurisdictional statement, (2) a short and plain statement of the claim, and (3) an explanation of the relief sought. Fed. R. Civ. P. 8(a). "That's it. By listing these elements, Rule 8 implicitly 'excludes other requirements that must be satisfied for a complaint to state a claim for relief.'" *Gallivan v. United States*, 943 F.3d 291, 293 (6th Cir. 2019) (citing Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts § 10, at 107 (2012) (other citation omitted).

"Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *In re Regions Morgan Keegan ERISA Litigation*, 692 F. Supp. 2d 944, 952 (W.D. Tenn. 2010) (quoting *Erickson v. Pardus*, 551

5

U.S. 89, 93 (2007)). Accordingly, to survive a motion to dismiss under Rule 12(b)(6), a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570). This means, a complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Smith v. Gen. Motors LLC*, 988 F.3d 873, 877 (6th Cir. 2021) (citing *Boland v. Holder*, 682 F.3d 531, 534 (6th Cir. 2012)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570); *see also Ryan v. Blackwell*, 979 F.3d 519, 524 (6th Cir. 2020) ("A complaint must contain enough 'factual matter' to raise a 'plausible' inference of wrongdoing.") (quotation omitted).

***Facial plausibility is established*** "when the ***plaintiff pleads factual content*** that ***allows the court to draw the reasonable inference that the defendant is liable for the misconduct allege*d**." *Iqbal*, 556 U.S. at 678 (emphasis added). "The plausibility of an inference depends on a host of considerations, including **common sense** and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the alleged conduct]." *Twombly*, 550 U.S. at 556. Because of this high bar and the requirement to accept all factual allegations as true, "[a] ***motion to dismiss under Rule 12(b)(6) is disfavored and rarely granted***." *Nuchols v. Berrong*, 141 F.App'x 451, 453 (6th Cir. 2005) (emphasis added) (quoting *Harris v. Am. Postal Workers Union*, 198 F.3d 245 (6th Cir. 1999)).

6

**II.　　This Case Should not be Dismissed Under the First-to-File Rule.**

The first-to-file rule does not apply here because Agilent's and FMIC's actions are in the same Court and before the same federal district court judge and the parties and claims are not identical. The first-to-file rule instructs that "when actions involving nearly identical parties and issues have been filed ***in two different district courts***, 'the court in which the first suit was filed should generally proceed to judgment.'" *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016) (emphasis added) (quoting *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007)); *see also Zide Sport Shop of Ohio v. Ed Tobergte Assoc., Inc.*, 16 Fed. App'x 433, 437 (6th Cir. 2001). Thus, only "duplicative" suits "involv[ing] 'nearly identical parties and issues'" that have been filed in "***two different district courts***" are subject to the first-to- file rule. *Baatz*, 814 F.3d at 789 (quoting *Certified Restoration*, 511 F.3d at 551).

"Duplicative lawsuits are those in which the issues 'have such an identity that a determination in one action leaves little or nothing to be determined in the other.'" *Fuller v. Abercrombie & Fitch Stores, Inc.*, 370 F. Supp. 2d 686, 688 (E.D. Tenn. 2005) (quoting *Smith v. S.E.C.*, 129 F.3d 356, 361 (6th Cir. 1997)). To determine whether the suits will be duplicative, the Sixth Circuit considers three factors: "(1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake." *Id.*; *see also Baatz*, 814 F.3d at 789 (citing *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991)).

Here, St. Paul asserts that the first-to-file rule warrants a dismissal of this action. But St. Paul overestimates the reach of the first-to-file rule as applied previously by this Court, the Sixth Circuit and other district courts in the Sixth Circuit. As articulated by the Sixth Circuit, the first-to-file rule applies when actions involving substantially similar parties and issues are filed "in

7

***two different district courts***." *Baatz*, 814 F.3d at 789 (emphasis added). Unlike the cases where the first-to-file rule traditionally applies, both the *Agilent* Case and this Case are in the same district court. In fact, in the context of two cases pending before the same court or the same judge, courts in the Sixth Circuit, including this Court, regularly decline to apply the first-to-file rule. *See Wade v. Foremost Ins. Co. Grand Rapids*, 2019 U.S. Dist. LEXIS 241868 *5-6 (W.D. Tenn. Sept. 3, 2019) (holding the first-to-file rule not applicable where the two cases were before the same court); *Powell v. Oldham*, 2018 U.S. Dist. LEXIS 39058, *12 (W.D. Tenn. Mar. 9, 2018) (collecting cases declining to apply the first-to-file rule when the two actions are actively pending before the same judge); *Word Music, LLC v. Priddis Music, Inc.*, 2007 U.S. Dist. LEXIS 80374, *3 (M.D. Tenn. Oct. 30, 2007) (concluding that the first-to-file rule "is no longer relevant" after transfer of the second action to the same district and judge presiding over the first action).

Moreover, not only are the instant Case and the *Agilent* Case not in different district courts, but this is clearly not a "race to the courthouse" situation, as FMIC is not involved in the *Agilent* Case, and FMIC's subrogation claim is not already pending in the *Agilent* Case.[4] FMIC and Agilent are simply not identical parties, and the "first-to-file" rule is thus inapplicable. Moreover, the claims at issue in these two cases are not the same. While Agilent and FMIC have both asserted breach of contract, negligence and gross negligence claims against Xpedient and have both asserted negligence claims against St. Paul, FMIC has also asserted negligence per se claims

---

[4]    The Court in *Hertel v. Bank of Am. N.A.*, 2012 U.S. Dist. LEXIS 130232, *7-8 (W.D. Mich., Sept. 13. 2012) expressed doubt that as to whether the first-to-file doctrine is appropriate in situations not involving a "race to the courthouse," because "[t]he Sixth Circuit has only invoked this doctrine in actions where one party has filed a declaratory judgment action in one district and the other party has filed a legal action for damages in another."

against Xpedient and St. Paul and a gross negligence claim against St. Paul. Thus, the claims at issue are not "duplicative," as determination of all the issues in the *Agilent* Case would not resolve FMIC's negligence per se claims against Xpedient and St. Paul and a gross negligence claim against St. Paul in this Case. For all of the above reasons, the first-to-file rule is inapplicable, and this Case, the second filed action, is not subject to dismissal.

### III. Based upon the Well-Pled allegations in FMIC's Complaint St. Paul can be held liable for its Negligent, Grossly Negligent and Negligent Per Se Conduct under Tennessee law.

"To prevail on a negligence claim, a plaintiff must prove the following: 1) a duty of care owed by the defendant to the plaintiff; 2) conduct falling below the applicable standard of care amounting to a breach of that duty; 3) an injury or loss; 4) causation-in-fact; and 5) proximate, or legal, cause." *Borne v. Celadon Trucking Servs., Inc.*, 532 S.W.3d 274, 300 (Tenn. 2017) (quoting *King v. Anderson Cnty.*, 419 S.W.3d 232, 246 (Tenn. 2013)). Here, FMIC's Complaint clearly alleges all of the requisite elements of a negligence claim against St. Paul. Indeed, St. Paul does not dispute this fact in its Motion. Instead, St. Paul contends that FMIC's negligence, gross negligence and negligence per se claims should be dismissed because it is a landlord and "a landlord is not liable to a tenant or a third party for harm caused by a dangerous condition on the leased premises" (essentially a no duty owed argument). The cases cited by St. Paul in support of this argument are inapposite and distinguishable from the instant case, as none of the cases cited involved factual scenarios which triggered one of the exceptions to application of the doctrine of caveat lessee, *discussed infra*, as is the case here.

In *Denton v. Hahn*, the Tennessee Court of Appeals stated as follows:

> In cases involving leased premises, the general rule in Tennessee is that a landlord is not liable to a tenant or a third party for harm caused by a dangerous condition on the leased premises. Over time, however, our Supreme Court has carved out the following exceptions to this general rule: The first exception

9

involves dangerous conditions on the premises existing at the time of the lease when the landlord has actual or constructive notice of the condition and the tenant does not. *The second exception involves dangerous conditions caused either by the landlord's failure to make repairs it has a duty to make or the landlord's negligence in performing repairs, regardless of whether it had a duty to make the repairs*. *The third exception involves the dangerous conditions on portions of property over which the landlord has retained control*. The fourth exception involves dangerous conditions on property leased for purposes involving the admission of the public.

*Denton v. Hahn*, 2004 Tenn. App. LEXIS 605, 2004 WL 2083711, at *6 (Tenn. Ct. App. Sept. 16, 2004) (internal citations, quotations and footnotes omitted) (emphasis added).

Additionally, in *Smith v. Owen*, 841 S.W.2d 828 (Tenn. Ct. App. 1992), the Tennessee Court of Appeals recognized yet another exception to the caveat lessee doctrine by finding that a landlord can be held liable for damages sustained by a third party on a leased premises where the landlord's violations of the building code caused the third party injury. In *Smith*, the parents of a child who received a severe electric shock from defects in the wiring of a home filed suit against their landlord based on negligence per se. *Smith*, 841 S.W.2d at 829. The trial court found the landlord liable, concluding that the injury resulted from a violation of the Standard Housing Code, which was adopted by the City of Cookeville and expressly prohibited the renting of a dwelling for living purposes without a prior inspection to determine that its condition met the standards of the code. *Id.* at 830.

On appeal, the landlord argued that Tennessee courts have declined to find liability where a defendant has neither actual nor constructive knowledge of the violation and is not otherwise negligent. *Id.* at 831. The Court of Appeals agreed that the landlord "did not have notice of the unsafe condition of the electrical outlet, …" "[h]owever," the Court explained, "*this is immaterial*, because negligence per se liability turns on constructive notice of the duty imposed by the statute or ordinance, not of the non-complying condition itself." *Id.* Stated differently, negligence per se

10

liability was not dependent on a landlord's actual or constructive notice of the non-complying condition itself. *Id.* The *Smith* court affirmed the trial court's judgment of liability on the basis of negligence per se because the landlord had constructive knowledge of the duty to inspect the premises as the housing code imposed a duty on a landlord not to lease a building until it complied with the requirements of the housing code. *Id.* at 833.

Here, FMIC has alleged that St. Paul owned and operated the Warehouse (ECF 1, ¶¶ 14, 94), that prior to and on the date of the Loss Event the HVAC system at the Warehouse relied on natural gas but was without a working gas line service and was unheated (ECF 1, ¶¶ 20-21), that prior to and on the date of the Loss Event the Warehouse contained a wet pipe fire sprinkler system that was unwrapped and without insulation (ECF 1, ¶ 19), that St. Paul maintained and operated the wet pipe fire sprinkler system (ECF 1, ¶ 120), that at all relevant times St. Paul knew or should have known that the Warehouse should be heated to at least 40° F as there was a wet pipe fire sprinkler system maintained therein (ECF 1, ¶ 22), that at all relevant times St. Paul knew or should have known that the Warehouse was without a working gas service line and was unheated (ECF 1, ¶¶ 23-24 ), and that St. Paul did not take the necessary steps to remedy this hazardous and dangerous condition by heating the Warehouse or by winterizing the wet pipe sprinkler system at the onset of freezing weather in 2023 and 2024 (ECF 1, ¶ 25).

FMIC has also alleged that St. Paul owed FMIC's subrogor a duty to maintain, inspect and repair the wet pipe fire sprinkler system and the HVAC system within the Warehouse, including a duty to ensure that the HVAC system was functioning and that the wet sprinkler system pipes were properly insulated and protected against freezing (ECF 1, ¶ 95). Further, FMIC's Complaint alleges St. Paul breached its duty of care to FMIC's subrogor by failing to properly maintain and repair the wet pipe fire sprinkler system, failing to properly inspect the wet pipe sprinkler system,

11

failing to ensure that the wet pipe sprinkler system was in good order and repair, failing to winterize the wet pipe sprinkler system at the onset of freezing weather, failing to properly inspect, maintain and repair the HVAC system, failing to ensure that the temperature in the Warehouse was at least 40° F, permitting dangerous conditions to exist within the Warehouse, failing to maintain the gas utilities serving the Warehouse, and ignoring the water and gas utility's instructions of safeguarding water pipes within the Warehouse from potential damage caused by freezing temperatures (ECF 1, ¶ 96).

Further, FMIC's Complaint makes clear that the Fire Code adopted by the City of Memphis requires St. Paul, as the owner of the Warehouse containing water-filled sprinkler piping, to maintain that piping at a minimum temperature of 40°F (4°C) (ECF 1, ¶¶ 116-118), that the Fire Code was enacted to protect a class of persons which includes Agilent (ECF 1, ¶ 114), that St. Paul had a duty to comply with the Fire Code (ECF 1, ¶ 119), that any person that violates the Fire Code shall be guilty of a misdemeanor (ECF 1, ¶ 113), and that St. Paul violated the Fire Code by, *inter alia*, failing to properly maintain and repair the wet pipe fire sprinkler system in the Warehouse so that the water in that system maintained a minimum temperature of 40°F (4°C) (ECF 1, ¶¶ 121-122)

Accordingly, FMIC's Complaint does not seek, as St. Paul suggests, to hold St. Paul liable for damages purely because it leased a premises to Xpedient. This is not a premises liability case. Agilent and FMIC are not tenants. This is an active negligence case. St. Paul as the Owner of the Warehouse containing a wet sprinkler system had a statutory duty (and a contractual duty) to keep the entire interior of the building above 40 degrees and to prevent the wet pipes from freezing. St. Paul failed to do so, and as a consequence the wet sprinkler pipes froze and burst, causing water damage to Agilent's property.

12

Further, at least three of the exceptions to the doctrine of caveat lessee recognized by Tennessee courts are invoked by the allegations of FMIC's Complaint: a code violation by St. Paul that created a dangerous condition, a dangerous condition caused by St. Paul's failure to make repairs[5] that FMIC alleges St. Paul had a duty to make (i.e., providing natural gas to serve the HVAC system, maintenance and repair of the HVAC system and maintenance, repair and freeze protection for the wet pipe sprinkler system); and the dangerous condition at issue existed on portions of property over which it is alleged St. Paul retained control (i.e., the wet pipe sprinkler system and the HVAC system).

In light of these specific allegations which, again, must be accepted as true for purposes of resolving a motion under Federal Rule of Civil Procedure 12(b)(6), St. Paul's argument that it cannot be held liable is devoid of merit and FMIC's Complaint should not be dismissed.

### IV. Given the Factual Content in FMIC's Complaint the Court Should Draw the Reasonable Inference from FMIC's Well-Pled Allegations that St. Paul was in Control of the Warehouse.

St. Paul next contends that FMIC cannot prove the prima facie element of duty in its negligence, gross negligence and negligence per se claims against St. Paul because FMIC does not allege that St. Paul, as owner of the Warehouse, was in "actual control" of the Warehouse. This contention, like so many others in St. Paul's Motion is devoid of merit. FMIC's Complaint is full of factual content that can only lead this Court to draw the reasonable and common sense inference that St. Paul was in actual control of the entire Warehouse, the entire HVAC system and the entire

---

[5] A defendant's duty to repair is further imposed when said defendant had actual or constructive notice of the condition and sufficient time to repair, remove, or warn against it. *Hahn* at *34. FMIC's Complaint alleges that St. Paul had actual notice of the lack of natural gas service, and the non-functioning HVAC system for roughly seven months before the Loss Event.

13

wet pipe sprinkler system, and is therefore liable for the misconduct alleged as required by *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, FMIC's Complaint (ECF 1) alleges that:

- St. Paul owned and operated the Warehouse (¶¶ 14, 41);

- At all times prior to the date of the Loss Event, the Warehouse (not just the leases premises) was without a working gas line and was unheated (¶¶ 19-25);

- At all times prior to the date of the Loss Event, the Warehouse contained a wet pipe fire sprinkler system (*Id*);

- At all times prior to the date of the Loss Event, St. Paul knew or should have known that the Warehouse should be heated to at least 40° F as there was a wet pipe fire sprinkler system that it maintained therein (*Id. plus* ¶ 120);

- At all times prior to the date of the Loss Event, St. Paul knew or should have known that the Warehouse was without a working gas service line and was unheated (*Id.*);

- At all times prior to the date of the Loss Event, St. Paul did not take the necessary steps to remedy this hazardous condition by heating the Warehouse (*Id.*);

- At all times prior to the date of the Loss Event, St. Paul did not take the necessary steps to remedy this hazardous condition by winterizing the wet pipe sprinkler system at the onset of freezing weather in 2023 and 2024 (*Id.*);

- On or around the evening of January 17, 2024, in the midst of the Deep Freeze Event, a fire sprinkler pipe located in the unheated Warehouse broke and failed, causing extensive water damage to Agilent's Tips Inventory(¶ 38); and

- St. Paul's failure to keep the Warehouse appropriately heated and/or the wet pipe fire sprinkler system winterized allowed the wet pipe fire sprinkler system to break and fail (¶ 39).

St. Paul's control of the Warehouse during Xpedient's tenancy is further corroborated by the Lease Agreement between St. Paul and Expedient, which provides that St. Paul will be responsible for ensuring normal utility service connections, and warrants that the heating system would be in "good working order." (Sealed Ex. 1 to Xpedient's Answer & Crossclaim in the

14

*Agilent* Case at §§ 1.06, 3.02, 3.05, 4.01, 5.06). Clearly, a reasonable inference from the above factual allegations is that St. Paul, as owner of the Warehouse, was in control of and was charged with a duty to maintain the temperature inside the ***entire Warehouse*** above 40° F so that the wet pipe fire sprinkler system running through that entire Warehouse would not freeze and burst, causing damage to property inside the Warehouse.

Indeed, beyond Tennessee, courts have held that implicit in an allegation of ownership of property is control of said property and that once ownership is established, the burden shifts to the owner to prove that they have fully relinquished control. As the New York Appellate Division explained, "[i]t is not incumbent upon the injured party affirmatively to prove that the owner has not in fact so divested himself of such possession and control." *Fochtman v. Gilman*, 195 N.Y.S.2d 39, 40–41 (N.Y. App. Div. 1959).

Put simply, this is not a situation where the allegations of St. Paul's negligent conduct are limited to that portion of the Warehouse leased to Xpedient. Rather, the allegations in FMIC's Complaint paint a clear picture that St. Paul owned, operated and controlled the entire Warehouse, including the wet pipe sprinkler system protecting, and the HVAC system serving, the entire Warehouse. Given that FMIC's Complaint contains direct and inferential allegations with respect to St. Paul's control of the entire Warehouse and control of the two systems at issue that caused this Loss Event, FMIC submits that this Court should find that FMIC has sufficiently pled enough factual content to establish at the pleading stage that St. Paul was in actual control of the Warehouse, the entire wet pipe sprinkler system and the HVAC system, and disregard St. Paul's arguments to the contrary.

### V.     FMIC has Sufficiently Pled its Negligence Per Se Claim against St. Paul.

Under Tennessee law, "[l]iability under the negligence per se doctrine can arise when a

15

party fails to perform a duty imposed by statute or ordinance." *Shaw v. Metro. Gov't*, 596 S.W.3d 726, 734 (Tenn. Ct. App. 2019) (citing *Little v. Nashville, Chattanooga & St. Louis Ry. Co.*, 39 Tenn. App. 130, 281 S.W.2d 284, 292 (Tenn. Ct. App. 1954)). The two threshold questions in every negligence per se case are whether the plaintiff belongs to the class of persons the statute was designed to protect and whether the plaintiff's injury is of the type that the statute was designed to prevent. *Id.*

St. Paul contends that FMIC cannot establish that the Fire Code at issue was designed to prevent the injury FMIC alleges it sustained and therefore FMIC's negligence *per se* claims should be dismissed. However, St. Paul is just flat wrong. The Fire Code at issue (the IFC) clearly provides that one of its express purposes is to ***establish a reasonable level of property protection from dangerous conditions in existing buildings***. Indeed, St. Paul states:

> The 2021 International Fire Code, as adopted by the City of Memphis in its ordinances, states its express purpose and describes the type of injury it was designed to prevent. Specifically, the ***purpose of the IFC is to establish "a reasonable level of*** life safety and ***property protection from*** the hazards of fire, explosion or [other such] ***dangerous conditions in*** new and ***existing buildings***, structures and premises, and to provide a reasonable level of safety to fire fighters and emergency responders during emergency operations."

St. Paul Memorandum of Law in Support of Motion to Dismiss (ECF 21-1 at p.7) (emphasis added).

Thus, St. Paul's contention based upon the holding in *Rains v. Bend of the River*, 124 S.W.3d 580, 590 (Tenn. Ct. App. 2003) that FMIC cannot establish that FMIC, as subrogee of Agilent, "belongs to the class of persons the statute was designed to protect" and (2) cannot establish that FMIC's injury, as subrogee of Agilent, "is of the type that the statute was designed to prevent" ***must fail***. The allegations in FMIC's Complaint clearly establish that the Fire Code (i.e., the IFC) was designed to prevent the injury caused by St. Paul (i.e., property damage caused

16

by a dangerous condition in the Warehouse). FMIC alleges that St. Paul was negligent per se by violating the Fire Code in regard to the maintenance of the Warehouse's wet pipe sprinkler system and that said violation caused the property damages sustained by FMIC's insured.

### VI.     FMIC has Sufficiently Pled its Gross Negligence Claim against St. Paul.

FMIC has adequately alleged its claim for gross negligence against St. Paul. "To plead gross negligence a plaintiff must allege the elements of negligence, and also allege that the act in question was done with utter unconcern for the safety of others, or one done with such a reckless disregard for the rights of others that a conscious indifference to consequences is implied in law." *Doe v. Vanderbilt Univ.*, 2019 U.S. Dist. LEXIS 173269, at *58-59 (M.D. Tenn. Sep. 30, 2019) (citations and quotations omitted). "Wanton negligence is defined as '[a] heedless and reckless disregard for another's rights, with the consciousness that the act or omission may result in injury to another.'" *KMI Grp., Inc. v. Wade Acres, LLC*, 2019 Tenn. App. LEXIS 169, at *28-29 (Tenn. Ct. App. Apr. 5, 2019) (quoting *Craig v. Stagner*, 159 Tenn. 511, 19 S.W.2d. 234, 236 (Tenn. 1929)).

FMIC's Complaint alleges that St. Paul, as the owner of the Warehouse with a wet-pipe sprinkler system, had a duty to comply with Fire Code. FMIC's allegations document St. Paul's failure for at least seven months (ECF 1, ¶¶ 18-25) and failure in the face of the impending Deep Freeze Event (ECF 1, ¶¶ 26-28) to ensure the HVAC system in the Warehouse was functional so that it could provide an environment of at least 40° F. Indeed, FMIC alleges that:

- St. Paul knew or should have known that if the Warehouse was not heated to at least 40° F then the wet pipe fire sprinkler should be insulated or winterized prior to the onset of freezing weather conditions (ECF 1, ¶ 100);

- St. Paul was put on notice by MLGW that the Cromwell Warehouse's natural gas service was not functioning properly as early as May 2023 (ECF 1, ¶ 101);

17

- St. Paul allowed the natural gas service to the building to remain inoperable and in disrepair through the date of the Water Loss Event that destroyed Agilent's Tips Inventory (ECF 1, ¶ 102);

- At least seven days prior to the Water Loss Event, Defendant St. Paul was warned by news outlets of the impending winter weather storm and put on further notice by MLGW that the incoming severe freezing weather in the Memphis-area required precautions from owners, tenants and operators of commercial buildings to ensure the prevention of frozen sprinkler pipes and subsequent pipe bursts (ECF 1, ¶ 103); and

- St. Paul ignored and disregarded these warnings and notices relaying the urgency to protect assets from potential damage caused by frozen pipes (ECF 1, ¶ 103).

The only reasonable inference from these allegations is that St. Paul acted with utter unconcern for the safety of other's property and/or in reckless disregard for the safety of Agilent's property stored in the Warehouse. Indeed, FMIC clearly alleges that "St. Paul, in conscious disregard and indifference to the safety and well-being of the property of Plaintiff's subrogor and others, failed to maintain a temperature of at least 40° F in the Cromwell Warehouse and failed to insulate or winterize the wet pipe fire sprinkler system maintained therein" (ECF 1, ¶ 105). Therefore, FMIC has clearly pled its gross negligence claims against St. Paul sufficiently to survive this Motion to Dismiss and to state its claim for relief.

### VII. If the Court Grants St. Paul's Motion, FMIC Should be Given Leave to Amend the Complaint as Requested in FMIC's Motion for Leave to Amend.

While FMIC respectfully submits that St. Paul's Motion should be denied for the reasons detailed above, if the Court finds any portion of St. Paul's Motion to be well taken, FMIC requests that its Motion for Leave to Amend its Complaint (ECF 24) be granted and that FMIC be allowed to file an amended complaint. "When a motion to dismiss is granted, courts typically grant leave to amend the complaint. Generally, if it is 'at all possible' that the losing party can state a claim for relief in a more carefully drafted complaint, the court should provide at least one opportunity

to amend." *In re Great Lakes Comnet, Inc.*, 588 B.R. 1, 23 (W.D. Mich. Bankr. 2018) (citing *Brown v. Matauszak,* 415 Fed. App'x 608, 614¬15 (6th Cir. 2011)); *Stewart v. IHT Ins. Agency Grp.*, LLC, 990 F.3d 455, 457 n.\* (6th Cir. 2021) ("Dismissal with prejudice and without leave to amend is only appropriate when it is clear on de novo review that the complaint could not be saved by an amendment."); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

## CONCLUSION

Wherefore, based on the foregoing reasoning, Plaintiff respectfully requests that this Court deny St. Paul's Motion to Dismiss.

Respectfully submitted,

/s/ S. Joe Welborn
S. Joe Welborn, TN BPR No. 21747
Brenden T. Holbrook, TN BPR No. 39485
SMITH CASHION & ORR, PLC
3100 West End Avenue
Suite 800 – One American Center
Nashville, TN 37203
(615) 742-8586 – Tel
jwelborn@smithcashion.com
bholbrook@smithcashion.com

*Attorneys for Plaintiff Factory Mutual Insurance Company, as subrogee of Agilent Technologies, Inc.*

# CERTIFICATE OF SERVICE

    I hereby certify that on July 2, 2025, I electronically filed ***Factory Mutual Insurance Company's Response to Defendant St. Paul Fire and Marine Insurance Company's Motion to Dismiss*** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Sean W. Martin
Michael J. Petherick
633 Chestnut Street, Suite 2000
Chattanooga, TN 37450
(423) 648-9832 / (423) 648-9869 FAX
swmartin@carrallison.com
mpetherick@carrallison.com
*Attorneys for St. Paul Fire and Marine Insurance Company*

William P. Thomas
Andrew B. Schrack
Butler Snow LLP
6075 Poplar Avenue, Suite 500
Memphis, TN 38119
Will.Thomas@butlersnow.com
Andrew.Schrack@butlersnow.com

                                         */s/ S. Joe Welborn*
                                         S. Joe Welborn